## THE EUGENE.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1898.)

No. 430.

1. APPEAL AND ERROR—FINALITY OF DECREE.
   A decree in admiralty, awarding libelants a definite sum, adjudging that a maritime lien exists therefor, and directing the sale of the vessel and payment of the proceeds into the registry to await the further order of the court, is a final appealable decree.

2. SAME—MARITIME LIENS—BREACH OF CONTRACT.
   There can be no maritime lien against a vessel for breach of a contract of carriage where she never in fact entered on the performance thereof, and neither the libelants nor their baggage were ever received on board, or placed in the care or control of the master. 83 Fed. 222, affirmed.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

Williams, Wood & Linthicum, for appellant.

John C. Hogan and Patterson & Easley, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The appellant is claimant of the steamboat Eugene, and brings this appeal from the decree of the court below against the steamboat and in favor of the libelants and of Walter M. Cary, Fred M. Lyons, and Edward J. Knight, named in the decree as interveners, each in the sum of $800, and directing that a writ of venditioni exponas issue against the vessel to satisfy the decree, with costs. Exceptions to the original libel having been sustained (83 Fed. 222), the libel was amended. As amended, it alleges, in substance, that the defendant Portland & Alaska Trading & Transportation Company was, during the times therein mentioned, a common carrier by water of passengers, baggage, and freight between the city of Seattle, Wash., and Dawson City, on the Yukon river, one E. B. McFarland being its general manager, and one C. W. Gould its transportation agent; that during all of the times mentioned the trading and transportation company owned and operated, in connection with its said business, the steamboat Eugene, and also operated, in the same connection, a steamship known as the Bristol; that on, prior, and subsequent to August 11, 1897, the Eugene and the respondent company caused it to be publicly and extensively advertised that the Eugene, in tow of the Bristol, would leave Seattle for Dawson August 23, 1897, and would transport passengers to the number of 350, or less, including their baggage and freight, not to

exceed 1,500 pounds each, and would reach Dawson City not later than September 15, 1897; that, relying upon the good faith of those advertisements, and believing those representations, and others of like effect, to be true, the libelants, on or about August 19, 1897, made and entered into a contract with the steamer Eugene, wherein and whereby that boat undertook and agreed to carry the libelants from the city of Seattle to Dawson City, and to leave Seattle on the voyage on the 24th day of August, 1897, and to reach Dawson City not later than September 15th of the same year; that the contract further provided that the Eugene should leave Seattle on the voyage in tow of the steamship Bristol, and should be towed by the Bristol from Seattle to the port of St. Michaels, Alaska, from which place the Eugene should continue the voyage alone up the Yukon river to Dawson City; in consideration of all which each of the libelants paid for passage on said steamer Eugene, with 1,500 pounds of baggage, the sum of $300, and received tickets for such passage. The amended libel further alleges that on the 24th day of August, 1897, the Eugene entered upon the performance of the alleged contract, and left the city of Seattle in tow of the Bristol, and undertook to carry the libelants and other passengers over the whole of the said voyage, and proceeded thereon 600 or 700 miles on the high seas to the coast of Alaska, where she abandoned the voyage, and refused to proceed further thereon. It is alleged that the libelants were landed at Victoria, B. C., each of whom was thereby damaged in the sum of $1,000 by reason of the loss of outfit, loss of time, and passage money. After the filing of an answer to the amended libel by the claimant, Walter M. Cary, Fred M. Lyons, and Edward J. Knight served upon the proctors for the claimant a petition in intervention, claiming the same relief against the steamboat Eugene upon a precisely similar state of facts; in respect to which intervention the respective parties stipulated that it should abide the result of the trial of the issues between the libelants and the claimant. One C. Hennigar also intervened in the cause for repairs made upon the Eugene subsequent to the libelants' claims, but afterwards that intervention was, by stipulation of the respective parties, eliminated from consideration. The decree awarded damages in favor of each of the libelants and interveners in the sum of $800, and further decreed that the vessel libeled be sold, and the proceeds paid into the registry of the court, after deducting the costs of sale, there to await the further order of the court in respect to their distribution.

The appellees, claiming that the decree is not a final one, move to dismiss the appeal on that ground. There is nothing in the point. The decree awards a definite sum to each of the libelants and interveners, decrees that a maritime lien exists therefor upon the Eugene, and directs the execution of the decree by the sale of the boat by the marshal under the admiralty process of the court. Such sale would divest the claimant of all title to the vessel. The direction that the marshal pay the proceeds into the registry of the court, there to await the further order of the court in respect to their disposition, was a mere incident. The merits of the controversy between the parties remained concluded by the decree, from which any dissatisfied

party had the right of appeal. Whiting v. Bank, 13 Pet. 6; Forgay v. Conrad, 6 How. 204; Withenbury v. U. S., 5 Wall. 819; Hill v. Railroad Co., 140 U. S. 52, 11 Sup. Ct. 690; The Alert, 9 C. C. A. 390, 61 Fed. 115. Hennigar was not a party to the proceedings sought to be reviewed. His intervention was, by the stipulation of all of the parties, withdrawn from consideration. See Gilfillan v. McKee, 159 U. S. 303, 16 Sup. Ct. 6.

In respect to the merits, but little need be said. The libels are based upon alleged contracts by which, in consideration of the payment of $300 each, the steamboat Eugene undertook and agreed to transport the libelants and interveners, with 1,500 pounds of freight each, from the city of Seattle to Dawson City. The difficulty in the way of affirming the decree (apart from the question raised as to the amount of damages awarded) is that the proof wholly fails to show that the Eugene ever undertook or agreed to transport either of the libelants or interveners from Seattle to Dawson City. On the contrary, the proof shows, without conflict, that the Eugene was to transport them from St. Michaels, Alaska, to Dawson City only. Upon the performance of that undertaking the Eugene never entered, nor did she ever receive on board either of the libelants or interveners, or any of their freight or baggage. We can discover no ground upon which a lien upon that boat can be sustained in favor of the appellees, or either of them. Decree reversed, and cause remanded for further proceedings not inconsistent with this opinion.