(No. 4407-)

FABICK TUGBOAT RENTAL CO., INC., A CORP., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 26, 1952.*

ENSEL, MARTIN, JONES AND BLANCHARD, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

DELANEY, J.

Complaint was filed herein by Fabick Tugboat Rental Co., Inc., a Corporation, claimant, on May 15, 1952 to recover for property damage to its motor vessel, the Nina F, and for loss of revenue sustained as the result of a collision of the Nina F with the Jefferson Street bridge, which spans the Des Plaines River at Joliet, Illinois, on May 26, 1950.

On May 26, 1950, the Nina F, under the command of Captain Albert Mallory, was proceeding upstream on the Des Plaines River in the vicinity of Joliet, Illinois. The Nina F was 68 feet long, and was controlled from the pilot house by automatic air brake controls. It was also equipped with an air horn and various lights. At the time in question, the Nina F was pushing three barges strung out ahead, each of the barges being 195 feet long and 35 feet wide. As the Nina F approached the Rock Island Railroad bridge in Joliet, Captain Mallory gave the proper signals, and stopped until a train crossed the bridge, and the bridge was reopened. North, or upstream from the railroad bridge, was the Jefferson Street bridge, a distance of approximately a quarter of a mile, or 1,320 feet. After the Nina F passed

under the railroad bridge, the Captain signaled the Jefferson Street bridge to open, but received no reply signal. The Captain went about half way between the two bridges, or some 600 feet south of the Jefferson Street bridge, and again gave the proper signal, but received none from the bridge tender. At that time Captain Mallory said he could see the bridge tender at his post, and he signaled him with the lights, but received no return signal. He continued on toward the bridge, and gave another signal when approximately 300 feet from the bridge, and then, not receiving a return signal, he gave a distress signal, and immediately reversed his engine to full astern, but he was unable to stop the Nina F, and the barges and the Nina F crashed into the bridge with the resulting damage.

Captain Mallory further testified that, as he proceeded upstream, he was traveling about two miles per hour, and that in his opinion he could stop the barge in the distance of about 300 feet. After the accident the Captain pulled the barge into the dock, and went back to the bridge tender to inquire why the bridge hadn't been opened. The testimony is that the bridge tender stated that he didn't see or hear any signals. Mallory testified that in his opinion the bridge tender was intoxicated.

The record consists of the complaint, motion of respondent for an extension of thirty days in which to file pleadings, order of Chief Justice granting respondent an extension of time to April 27, 1951 in which to file pleadings, Departmental Report, original transcript of evidence, copy of transcript of evidence, statement, brief and argument of claimant, statement, brief and argument of respondent, and reply brief of claimant.

The only evidence introduced at the hearing was

that of Captain Mallory and Frank V. Horvath, the manager and chief accounting officer of claimant Company, and the Departmental Report.

We are of the opinion that failing to raise the bridge, when it had ample notice of the approach of the vessel, was a neglect of duty on the part of the respondent. The State of Illinois, acting by and through its agent, was guilty of negligence, which proximately caused the damages complained of by the claimant.

In the case of *Clement* vs. *Metropolitan West Side El. Ry. Co.*, 123 Fed. 271 (C.C.A. 7th Cir., 1903), which involves facts similar to those in the instant case, the Court said:

"A bridge spanning a navigable river is an obstruction to navigation tolerated because of necessity and convenience to commerce upon land. Such a structure must be so maintained and operated that navigation may not be impeded more than is absolutely necessary, the right of navigation being paramount. It is incumbent upon the owner that the bridge be so constructed that it may be readily opened to admit the passage of craft, and maintained in suitable condition thereto. It is also his duty to place in charge those who are competent to operate the bridge, to watch for signals, and to open the bridge for the passage of vessels, and for the performance of such delegated duty he is responsible. It is also his duty to equip the bridge with proper lights giving warning of the position of the bridge and of its opening and closing. If for any reason the bridge cannot be opened, proper signals should be given to that effect, such as will warn the approaching vessel in time to heave to. A vessel, having given the proper signal to open the bridge and prudently proceeding under slow speed has, in the absence of proper warning, the right to assume that the bridge will be timely opened for passage. She is not bound to heave to until the bridge has been swung or raised and locked, and to critically examine the situation before proceeding (*City of Chicago* vs. *Mullen*, 54 C.C.A. 94, 116 Fed. 292), but may carefully proceed at slow speed upon the assumption that the bridge will open in response to the signal, and may so proceed until such time as it appears by proper warning, or in reasonable view of the situation, that the bridge will not be opened (*Manistee Lumber Company* vs. *City of Chicago* (D.C.), 44 Fed. 87; *Central Railroad Company of New Jersey* vs. *Pennsylvania Railroad Company*, 8 C.C.A. 86, 59 Fed. 192), when it becomes the duty of the vessel, if possible, to stop, and, if necessary, to go astern."

The cause of action herein having accrued on May 26, 1950, all claims against the State of Illinois for

damages in cases sounding in tort shall not exceed the sum of $2,500.00.

An award is, therefore, entered in favor of the claimant, Fabick Tugboat Rental Co., Inc., for the sum of $2,500.00.